Filed 8/11/21  P. v. Cadogan CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ROBERT LEE CADOGAN,<br><br>    Defendant and Appellant. | G059984<br><br>(Super. Ct. No. FVI020591)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of San Bernardino County, Eric M. Nakata. Affirmed.

Marcia R. Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

We appointed counsel to represent Robert Lee Cadogan on appeal. Counsel filed a brief that set forth the facts of the case. Counsel did not argue against her client but advised the court she found no issues to argue on his behalf.

Counsel filed a brief following the procedures outlined in *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). The court in *Wende* explained a *Wende* brief is one that sets forth a summary of proceedings and facts but raises no specific issues. Under these circumstances, the court must conduct an independent review of the entire record. When the appellant himself raises specific issues in a *Wende* proceeding, we must expressly address them in our opinion and explain why they fail. (*People v. Kelly* (2006) 40 Cal.4th 106, 110, 120, 124.)

Pursuant to *Anders v. California* (1967) 386 U.S. 738 (*Anders*), to assist the court with its independent review, counsel provided the court with information as to issues that might arguably support an appeal. Counsel raised only one issue, did the court err in finding Cadogan did not qualify for a reduced sentence pursuant to Penal Code section 1170.91 (all further references are to the Penal Code).

We gave Cadogan 30 days to file written argument on his own behalf, and he did. The multiple issues Cadogan raises are described below.

We have independently reviewed the record in accordance with our obligations under *Anders* and *Kelly*. We found no arguable issues on appeal. We affirm the judgment.

FACTS

A detailed recitation of the facts is set forth in the prior opinion in this case. (*People v. Cadogan* (May 20, 2009, G040200) [nonpub. opn.] (*Cadogan*).) Suffice it to say, in the early morning hours, Cadogan entered the victim's residence while she was sleeping. Cadogan blocked the door, shoved a gloved hand in the victim's mouth, put his

2

penis in the victim's mouth, attempted to penetrate her anus, and then inserted his penis into her vagina. Cadogan was charged with numerous felony counts. (*Cadogan, supra,* G040200.)

The trial court ordered criminal proceedings suspended based on defense counsel's representation he believed Cadogan might be mentally incompetent. The court received a report from a psychologist opining Cadogan was not competent to stand trial. Cadogan refused to talk to the psychologist and insisted at the hearing he was competent to stand trial. On that basis, the court appointed a second psychologist to evaluate Cadogan. (*Cadogan, supra,* G040200.)

A jury found Cadogan competent to stand trial, and the trial court reinstated criminal proceedings against him. A second jury convicted Cadogan of forcible rape (§ 261, subd. (a)(2)), forcible oral copulation (§ 288a, subd. (c)(2)), attempted sodomy by use of force (§§ 664, 286, subd. (c)(2)), and first degree residential burglary (§ 459). The court sentenced Cadogan to 37 years to life in prison. On appeal, that sentence was modified to 34 years to life in prison. (*Cadogan, supra,* G040200.)

Eleven years later, Cadogan filed a petition seeking resentencing pursuant to section 1170.91. The trial court appointed counsel for Cadogan and a hearing was conducted. At the outset of the hearing, counsel advised the court he had been unable to obtain any verification from the Department of Veterans Affairs or the military to support Cadogan's assertions in his moving papers. Counsel asked the court, for purposes of the motion, to accept the information provided by Cadogan as true and decide the motion on its merits.

The prosecution acknowledged defense counsel's efforts in trying to locate the supporting documents. She added the following: "I think we can proceed and accept that what . . . Cadogan has submitted is not necessarily true but that is what he is

3

purporting is true and it's what he is saying happened. And the documents that he has provided, I think that that's up to the [c]ourt to determine if they're true or what weight to give them, if any, and that we can proceed on the very narrow issue that's before the [c]ourt."

The trial court indicated that having tried the underlying case and having observed Cadogan, it doubted whether Cadogan was ever in the military. The court commented Cadogan did not act like somebody who was in the military. The court said that despite its doubts, if counsel was willing to stipulate the information is purportedly true, the court would accept the stipulation and proceed.

The information in Cadogan's petition indicated he served in the United States Navy from October 14, 1986, until he was discharged in October 23, 1987. During that time, Cadogan sustained a head injury after slipping on the wet kitchen floor and attempted to get X-rays of his head injury. Cadogan claimed someone later found him lying unconscious on the starboard side of the ship. He was married and had an infant son and was under so much stress he developed bleeding ulcers. Naval medical records showed he was diagnosed with peptic ulcers and treated with medication. Cadogan claimed he was also suffering from dizziness, fainting spells, and headaches that medical staff on board ascribed to sea sickness. Naval intelligence arrested him for larceny and possession of drug paraphernalia and sentenced him to the brig for one year. Subsequently, he was stripped of his security clearance due to "criminal and dishonest" conduct. Cadogan asserted his time in the brig caused him stress, and that while he was incarcerated, his wife told him that she was pregnant with another man's child. Cadogan stated he was prescribed medication while incarcerated in the brig, and he continued to use drugs.

4

Cadogan contended that as a result of his head injury, he suffered from seizure disorders that required "life sustaining medication," and that his "legal troubles, marital and mental problems" stemmed from his effort to deal with the headaches by using "cocaine, meth and marijuana." Unable to support his addiction, Cadogan began to commit burglaries.

Cadogan included a medical report from the California Department of Corrections and Rehabilitation that stated he reported having had a seizure. The report also stated he complained of lower back pain and pain in his left knee. The neurological assessment showed Cadogan was "within normal limits."

The underlying convictions were committed roughly 17 years after Cadogan's discharge from the military. He filed his petition some 14 years after his convictions. Cadogan argued he only began to understand how his military service caused his psychological problems after he moved to a prison facility where he was able to attend rehabilitative groups and regularly meet with a psychologist.

The prosecution filed an opposition to Cadogan's motion stating that because he was serving an indeterminate sentence, he was ineligible for relief pursuant to section 1170.91, and that the evidence did not support the claim Cadogan's service in the military caused him mental or sexual trauma. At the hearing, the prosecution argued Cadogan presented nothing that justified modifying his sentence.

The trial court stated it had read all of the papers. The court said Cadogan had the opportunity to present this information before he was initially sentenced, but he never mentioned any of these circumstances. Quoting from the probation report, the court said, "'Upon arriving at the interview room the defendant became defiant and began yelling for his lawyer.'" The court said it had reviewed the information but said the

5

information did not sway the court. The court cited to the nature of the case, the violence that was involved, and the violence Cadogan displayed in courtroom during the trial. The court denied the motion. Cadogan filed a timely notice of appeal.

As relevant to the issue on appeal, in his supplemental brief Cadogan asserted he was eligible for resentencing "based on his drug addiction, P.T.S.D., brig arrest for drugs and theft of money." He argued his medical conditions while he was serving in the Navy were more serious than the Navy indicated. He also alleged the trial judge was prejudiced against him. He based this allegation on the fact he had been a member of the United States Navy and the judge was Japanese, referencing the December 7, 1941, attack on Pearl Harbor. Cadogan recounted all the problems he had encountered while in the service, and claimed he was "a psychological mess." Cadogan stated the following: "[he] had been locked up on this case for almost 17 years. The lock up has helped petitioner figure out the causative factors in his case."

In his supplemental brief, Cadogan also attacked his conviction alleging various errors. Because this appeal is limited to the court's denial of Cadogan's section 1170.91 petition, we do not address these issues.

DISCUSSION

In 2018, the Legislature amended section 1170.91 creating a remedy for qualifying defendants who were sentenced before section 1170.91 went into effect. Section 1170.91, subdivision (b)(1), provides as follows: "A person currently serving a sentence for a felony conviction, whether by trial or plea, who is, or was, a member of the United States military and who may be suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of his or her military service may petition for a recall of sentence, . . . to request resentencing pursuant to subdivision (a) if the person meets both of the following

6

conditions:  [¶] (A) The circumstance of suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of the person's military service was not considered as a factor in mitigation at the time of sentencing.  [¶] (B) The person was sentenced prior to January 1, 2015."

Section 1170.91, subdivision (b)(3), provides as follows:  "Upon receiving a petition under this subdivision, the court shall determine, at a public hearing held after not less than 15 days' notice to the prosecution, the defense, and any victim of the offense, whether the person satisfies the criteria in this subdivision.  At that hearing, the prosecution shall have an opportunity to be heard on the petitioner's eligibility and suitability for resentencing.  If the person satisfies the criteria, *the court may, in its discretion, resentence the person following a resentencing hearing.*  (Italics added.)  Section 1170.91's language clearly indicates relief is discretionary.

"In reviewing for abuse of discretion, we are guided by two fundamental precepts.  First, '"[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary.  [Citation.]  In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review."'  [Citations.]  Second, a '"decision will not be reversed merely because reasonable people might disagree.  'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.'"'  [Citations.]  Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it."  (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377.)

Here, the trial court denied Cadogan's petition after stating its reasons.  Its decision was neither irrational nor arbitrary.  We see no abuse of discretion.

7

DISPOSITION

The judgment is affirmed.


O'LEARY, P. J.

WE CONCUR:


MOORE, J.


GOETHALS, J.